# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### STATESBORO DIVISION

| | | |
|---|---|---|
| LONNIE JACOB RAGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV621-042 |
| | ) | |
| LT. FNU BLAKELY *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND REPORT AND RECOMMENDATION

*Pro se* plaintiff Lonnie Jacob Ragan, an inmate at Georgia State Prison, has filed a complaint concerning the conditions of his confinement. *See generally* doc. 1. The Court granted him leave to proceed *in forma pauperis* and he partially complied with the Court's Order. *See* docs. 5 & 6. He has also filed two documents, the first styled a "Notice," doc. 4, and the second on a state-court form "Petition for a Writ of Mandamus," doc. 8. Given Ragan's failure to fully comply with the Court's previous instructions and the ambiguous state of his pleadings, the Court will afford him one opportunity to address the various defects. To the extent that his "Petition for a Writ of Mandamus"

seeks preliminary relief independently from his other pleadings, his request should be **DENIED**.  Doc. 8.

The Court's prior Order authorizing Ragan to proceed *in forma pauperis* directed him to return a Prisoner Trust Fund Account Statement and a Consent to Collection of Fees from Trust Account.  *See* doc. 3 at 4.  Ragan timely returned the forms.  *See* docs. 5 & 6.  However, the Order instructed that the Trust Fund Account Statement was to be completed and signed by the prison officer responsible for overseeing prisoner trust accounts.  *See* doc. 3 at 4; *see also* doc. 6 (Account Statement form).  Rather than having the responsible official complete and sign the form, Ragan (apparently) has completed the form and left it unsigned.  Doc. 6.  A notation on the form suggests that he fears retaliation for filing this case.  *See id.* ("This will spread through the camp.  I will not survive.  I will be killed.").  That notation is not sufficient for the Court to excuse his noncompliance.  If Ragan contends that he is unable to have the form completed as instructed, he must formally request, by motion, that he be excused from the requirement.  Any such motion must include sufficient information for the Court to evaluate his request.  Vague suggestions of threat will not suffice.

Ragan is **DIRECTED** to return either the completed form or a formal request to be excused from the requirement that he submit the completed form within twenty-one days from the date of this Order. As discussed below, he must also submit an Amended Complaint within that same period. The Clerk is **DIRECTED** to include a blank copy of the Prisoner Trust Fund Account Statement with this Order for Ragan's convenience. Failure to comply with this Order may result in a recommendation that his case be dismissed for failure to prosecute or failure to obey a court order. *See* Fed. R. Civ. P. 41(b).

Ragan's Complaint is, charitably, hard to follow. He alleges that another inmate, "put stricnine and methamphedimine [sic]," presumably "strychnine" and "methamphetamine," "in [his] food." Doc. 1 at 5. That same inmate, along with unidentified others, "were playing sounds and threat[en]ing [his] family to try to extort [him]." *Id.* He alleges that he told Defendant Blakely, who took no action. *Id.* The inmate later claimed that "they had [Ragan's] family held hostage . . . ." *Id.* That claim/threat lead to a fight, which defendants Blakely and Milken, "with other officers," responded to. *Id.* He alleges "Blakely and Milken was drunk." *Id.* Ragan asked to speak to the warden and Blakely refused. *Id.* Blakely

"then proceeded to do an unauthorized extraction using extreme force." *Id.* Ragan was "taken down to medical and the Tazer prongs were snatched out . . . ." *Id.* He was then placed "in a strip cell," where "a woman was filming this on her cell phone," because she said that he was a suicide risk. *Id.*

After relating that relatively compact narrative, Ragan proceeds to list complaints about the conditions of his confinement, including: "cameras and microphones placed in [his] room by inmates," lack of cleaning products, withholding food "until [he] had to knife fight with orderl[ies] who do the feeding," that he was provided with a "Ramadan tray," despite being a "Messianic Jew," because he "pray[s] like Jews (prostrate)," he was denied access to a phone, he was placed in a cell with feces on the walls and a malfunctioning toilet. Doc. 1 at 6. Approximately a week after filing his initial Complaint, Ragan submitted a "Notice" that includes an allegation that he has been "poisoned again." *See* doc. 4 at 1. It also alleges that Milkin "has put a hit on [his] head." *Id.* It also alleges that Milken has forced Ragan to defecate on himself "by force." *Id.* His "Petition for a Writ of Mandamus" alleges that a fight with his cellmate was instigated by Milkin. *See* doc. 8 at 1.

Taken as a whole, Ragan's pleadings implicate a number of potential claims, but do not state any actual, viable claim. His vague allegations that other inmates are "poisoning" or threatening him suggest a claim that some prison officials are deliberately indifferent to a serious risk of harm. *See, e.g., Farmer v. Brennan,* 511 U.S. 825, 833 (1994). However, the details are too vague to support a claim. Courts have recognized "[t]he unfortunate reality . . . that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019) (internal citations and quotations omitted); *see also Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) ("There must be a 'strong likelihood' of injury, 'rather than a mere possibility,' before an official's failure to act can constitute deliberate indifference." (citation omitted)).

Ragan might also allege that he was subjected to excessive force during the "unauthorized extraction." *See* doc. 1 at 5. The Eighth Amendment governs prison official's use of force against inmates. *See Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). However, such a claim requires that the officer acted "maliciously and sadistically for

the very purpose of causing harm." *Id.* (internal quotation marks and citations omitted)).  The fact that Ragan expressly alleges that the force was used in response to a "fight" suggests that, even if the degree of force used might have been excessive, it was not malicious or sadistic. *See id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)) (" 'The infliction of pain in the course of a prison security measure … does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense.'"). Ragan's allegations fail to plead that any of the officers involved in the "extraction" had the requisite intent.

The remaining allegations are simply too vague for even cursory analysis.  First, Ragan's allegation that Blakely and a "Nurse Mitchell" roughly removed the Taser prongs after the extraction, *see* doc. 1 at 5, might be an attempt to allege excessive force, or inadequate medical care, or it might simply be an aside.  His subsequent allegations that he told "them," about "bullying" from other inmates and the allegation that those inmates have placed "camera's and microphones . . . in [his] room," *id.*, might be intended to allege a failure-to-protect claim, but without any

explanation about the nature of the threats, the identities of the people

he told, and their response, the Court cannot tell.  His allegations about

unsanitary conditions, again, could support a claim, but there is

insufficient information about their extent or duration.  *See, e.g., Hudson*

*v. McMillian*, 503 U.S. 1, 9 (1992) ("[E]xtreme deprivations are required

to make out a conditions-of confinement claim.   Because routine

discomfort is part of the penalty that criminal offenders pay for their

offences against society, [cit.], only those deprivations denying the

minimal civilized measure of life's necessities are sufficiently grave to

form the basis of an Eighth Amendment violation.").  His allegations that

his food was withheld, perhaps by another inmate, or that some prison

official or employee failed to accommodate his religious beliefs, are also

too vague to state a claim.  *Cf., e.g., Ascroft v. Iqbal*, 556 U.S. 662, 678

(2009) ("A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." (internal quotation marks

and citation omitted).

   Despite Ragan's failure to state any claim upon which relief may be

granted, he is entitled to an opportunity to amend his Complaint.  *See,*

*e.g.*, *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015) (citation omitted) ("Generally, when a more carefully drafted complaint might state a claim, a district court should give a *pro se* plaintiff at least one chance to amend the complaint before the court dismisses the action."). Accordingly, Ragan is **DIRECTED** to file an Amended Complaint no later than twenty-one days from the date of this Order and Report and Recommendation. Ragan is advised that his amended complaint will supersede his original pleadings and therefore must be complete in itself. *See Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1345 n. 1 (11th Cir. 1999) ("An amended complaint supersedes an original complaint"); *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982). Failure to comply with the Court's instructions may result in a recommendation of dismissal. *See* Fed. R. Civ. P. 41(b).

Ragan has also filed a pleading that appears to be a request for injunctive relief. Although the document facially requests a writ of mandamus, pursuant to Georgia law, the Court is not bound by that label. *See, e.g., Retic v. United States*, 215 F. App'x 962, 964 (11th Cir. 2007) ("Federal courts sometimes will ignore the legal label that a *pro se*

litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category."). Ragan's motion alleges that his food is being tampered with, and he is not being provided with grievance forms. *See* doc. 8 at 1-2. He requests an order placing him in "protective custody, away from all harm or any form of retaliation . . . ." *Id.* at 2. Based on that request, the Court will construe his motion as seeking either a temporary restraining order or preliminary injunction. Under either construction, it should be **DENIED**. Doc. 8.

It is clear, at least, that Ragan's motion seeks some form of "preliminary" relief; that is, relief granted before a full determination of the merits of his claims. Such requests are governed by Federal Rule of Civil Procedure 65. That Rule provides for two types of preliminary relief, temporary restraining orders and preliminary injunctions. *See* Fed. R. Civ. P. 65(a)-(b). A preliminary injunction can only be issued if notice has been provided to the adverse party. Fed. R. Civ. P. 65(a)(1). Temporary restraining orders may be issued without notice, but only under limited circumstances. Fed. R. Civ. P. (b)(1)(A)-(B). A party seeking a temporary restraining order must "certif[y] in writing any efforts made to give notice [to the opposing party] and the reasons why it

should not be required." Fed. R. Civ. P. 65(b)(1)(B). Courts have found

that *pro se* parties are not excused from the requirement. *See Vaughan

v. Bank of America, NA*, 2010 WL 3273052, at * 1 (S.D. Ala. Aug. 18,

2010). Given the liberal construction afforded to *pro se* pleadings, the

Court might construe the general discussion of exigency, *see generally*

doc. 8, as "the reasons why [notice of the requested temporary restraining

order] should not be required." Fed. R. Civ. P. 65(b)(1)(B); *see also, e.g.,*

*Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) ("[A]lthough we

are to give liberal construction to the pleadings of *pro se* litigants, we

nevertheless have required them to conform to procedural rules."

(internal quotation and citation omitted)).

Even if Ragan's motion were not procedurally deficient, it still fails.

"In this Circuit, a preliminary injunction is an extraordinary and drastic

remedy not to be granted unless the movant clearly established the

burden of persuasion as to each of the four prerequisites"; namely (1) a

substantial likelihood of success on the merits; (2) that the movant will

suffer irreparable injury unless the injunction issues; (3) that the

threatened injury outweighs whatever damage the proposed injunction

may cause the opposing party; and (4) that the injunction would not be

adverse to the public interest.  *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th

Cir. 2000) (internal quotation marks, alterations, and citations omitted)).

"[G]ranting or denying a temporary restraining order or preliminary

injunction rests within the discretion of the district court."  *Hernandez v.*

*Inch*, 2021 WL 5361086, at *1 (N.D. Fla. Oct. 8, 2021) (citing *Carillon*

*Imps., Ltd. v. Frank Pesce Int'l Grp. Ltd.*, 112 F.3d 1125, 1126 (1997)).

As discussed above, none of the pleadings submitted in this case

provide sufficient information for the Court to screen Ragan's claims,

much less establish a substantial likelihood of success on the merits.

Moreover, it is not clear that any of the named defendants in this case,

who are individual prison guards, has control over Ragan's placement.

To the extent that the requested injunction would issue against a non-

party, the Court lacks jurisdiction.  *See, e.g., Infant Formula Antitrust*

*Litig.*, 72 F.3d 842, 842-43 (11th Cir. 1995); *Holmes v. Williams*, 2015 WL

4429092, at *8 (S.D. Ga. July 20, 2015).  Finally, even assuming that

Ragan could make the required substantive showing, and identify a

proper party, his request for an injunction against retaliation "would

serve little purpose, as it would amount to nothing more than an

instruction to 'obey the law'—a duty already in place."  *Lee v. Laughlin*,

2016 WL 7175628, at *1 (S.D. Ga. Dec. 8, 2016) (Bowen, J.) (citing *Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999)).  The motion should, therefore, be **DENIED**.  Doc. 8.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*,

648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F.

App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED,** this

<u>10th</u> day of February, 2022.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA